UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES EDWARD TIMS,

                Petitioner,

v.

JOHN CHRISTIANSEN,

                Respondent.

_____/

Case No. 1:22-cv-12421

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO
APPEAL *IN FORMA PAUPERIS***

In 2019, a jury in Kent County, Michigan, found Petitioner James Edward Tims guilty of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(2)(b); third-degree criminal sexual conduct, *id.* § 750.520d(1)(a); and accosting a child for immoral purposes, *id.* § 750.145a. Petitioner then filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition raises claims concerning evidentiary error, violations of the Confrontation Clause, and prosecutorial misconduct. For the reasons explained below, the Petition will be denied with prejudice, a certificate of appealability will not be issued, and leave to proceed *in forma pauperis* on appeal will be denied.

**I.**

The following facts from the Michigan Court of Appeals are presumed correct on habeas review, *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant, the boyfriend of one of the victim's sisters, assaulted the victim twice, once when 12 years old and again when 13 years old, each time at Roosevelt Park in Grand Rapids. The first assault happened after defendant and the victim went walking on a trail while smoking marijuana. They approached the staircase leading to a gym in the park and because the stairs were wet defendant offered his

lap to the victim to sit. The victim obliged and defendant began massaging her thighs and buttocks overtop her clothing. Defendant started kissing the victim's neck and tried touching her vagina underneath her clothing, but she declined and defendant stopped. Defendant then told the victim to get off his lap and he walked to the side of the building next to where they were sitting. Defendant pulled down his pants and told the victim to come near. The victim testified that she performed fellatio on him because she felt like she could not say no since his pants were already down.

Defendant told the victim that she hurt him because of her teeth and asked her to stop. He recommended that they try something different. The victim testified that defendant told her to "get in doggystyle," but she did not know what that meant. Defendant demonstrated what he meant by getting on his hands and knees. The victim complied because she felt like she could not say no. Defendant proceeded to put his penis inside the victim's vagina. Afterward, defendant made the victim stand up and show him her breasts. Defendant told the victim that she had to promise "to take this to the grave." She testified that he said that "he was going to kill me if I told or that he was going to hurt me."

The victim also testified regarding a second sexual assault by defendant when she was 13 years old. The victim and defendant texted and defendant sent her pictures of his penis. The victim talked with defendant about how she missed her older sister, so defendant offered to drive her to see her sister. She agreed and defendant drove them to the same location in Roosevelt Park where the first sexual assault happened. Because the victim and defendant had spoken about sex, she assumed that when defendant picked her up and brought her to Roosevelt Park that they would engage in sex and then go see her sister. When they arrived at the park, defendant and the victim went to the backseat of defendant's car where defendant took his penis out of his pants. Defendant pulled the victim's pants down, told her to get on top of him, and then vaginally penetrated the victim. After he finished, he threw the victim off of him. Two years later, the victim disclosed the abuse to her mother.

Thomas Cottrell, an expert qualified in child sexual abuse dynamics, testified that children do not typically disclose sexual abuse immediately; delayed disclosure occurs, whether it be weeks or decades. Cottrell stated that threats by the perpetrator may be a factor as to why a child does not disclose abuse. He testified that most sexual abuse cases involve someone that the child already knows who has a preexisting relationship with the family which can cause the abused child to become more reluctant to disclose out of fear that it will negatively impact the child's relationship with the family. Cottrell testified that an individual is more susceptible to sexual abuse if that individual had already been abused and that most children do not resist sexual assault because of the grooming that takes place.

The jury found defendant guilty.

*People v. Tims*, No. 352430, 2021 WL 1478342, at *1–2 (Mich. Ct. App. Apr. 15, 2021). A Kent County jury convicted Petitioner of first-degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b; third-degree criminal sexual conduct (CSC-III), *id.* § 750.520d; and accosting, enticing, or soliciting a child for immoral purposes, *id.* § 750.145a. The trial court sentenced Petitioner as a third-offense habitual offender, *id.* § 769.11, to concurrent sentences of 25 to 50 years' imprisonment for CSC-I, 10 to 30 years' imprisonment for CSC-III, and 2 to 8 years' imprisonment for accosting a child for immoral purposes.

Petitioner appealed his convictions and sentences by right in the Michigan Court of Appeals. He raised two claims of error concerning the admissibility of expert witness testimony and whether the trial court abused its discretion by limiting Petitioner's cross-examination of the complaining witness. ECF No. 13-9 at PageID.1028. The Michigan Court of Appeals rejected both claims. *Tims*, 2021 WL 1478342, at *2–6. Petitioner then applied for leave to appeal to the Michigan Supreme Court. *See* ECF No. 13-10. On October 8, 2021, the Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Tims*, 964 N.W.2d 608, 609 (Mich. 2021).

On October 11, 2022, Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. ECF No. 1. The Petition advances the following claims:

    I.      The trial court erred by permitting inadmissible expert testimony. In the alternative, trial counsel provided ineffective assistance by failing to object.

    II.     The trial court significantly limited Petitioner's right to cross-examine [the complaining witness] regarding a key issue, violating his constitutional right.

III.     The trial court erred by allowing prosecutorial misconduct when the prosecutor questioned the expert witness in a way that bolstered the victim's testimony.

ECF No. 1 at PageID.5, 7–8. Respondent filed an answer to the Petition contending that a portion of Petitioner's first claim is procedurally defaulted, the third claim is unexhausted, and all claims lack merit. ECF No. 12.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) constrains federal courts' review of state-court decisions in habeas cases. *See Smith v. Nagy*, 962 F.3d 192, 198 (6th Cir. 2020). Indeed, if a state court has already adjudicated a claim on the merits, a federal court may grant relief only if the state court's decision: (1) ran contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) rested on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). A state-court decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts governing Supreme Court law; or (2) confronts a set of facts "materially indistinguishable" from a decision of the Supreme Court and yet arrives at a different result. *Id*. at 405–06. A state-court decision involves an "unreasonable application" of clearly established federal law if it (1) correctly identifies the governing legal rule but unreasonably applies it to the facts of the instant case, or (2) either unreasonably extends an established legal principle to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Id*. at 407.

The Supreme Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 410. And later Supreme Court decisions have interpreted this directive to mean that an unreasonable application "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation modified). AEDPA "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). But the state court's error must be "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. At bottom, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id*. And for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.

### A. Evidentiary Error

Petitioner first argues that the trial court erred by allowing the prosecutor's expert witness to vouch for the complaining witness's credibility, and, alternatively, that defense counsel was ineffective for failing to object. ECF No. 1 at PageID.5. Respondent argues that this claim is procedurally defaulted because Petitioner failed to preserve the claim for appellate review. A court may bypass a procedural-default question if the claim is easily resolvable against the habeas petitioner. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Because it is more efficient

for the Court to address this claim on the merits, this Court will bypass the procedural default analysis for this claim.

The Michigan Court of Appeals rejected the claim under the plain-error standard, concluding that "Cottrell neither vouched for the victim's credibility nor provided expert opinion testimony about the victim." *Tims*, 2021 WL 1478342, at *3. The court further concluded that the expert's testimony was properly admitted under Michigan law because he "provided relevant general information regarding child sexual abuse dynamics to inform the jury regarding, among other things, basic reasons for victim late disclosure." *Id*. The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent.

First, this Court will not disturb the state court's holding that the evidence was properly admitted under state law. State courts are the final arbiters of state law, and federal courts will not intervene in such matters. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also White v. Steele*, 602 F.3d 707, 711 (6th Cir. 2009) ("State courts, after all are the final arbiters of the state law's meaning and application and [federal court] is not the appropriate forum to adjudicate such issues.") (internal quotation and citation omitted).

Second, Petitioner does not demonstrate a due process violation. The admission of evidence may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the admission "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (2003). The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly." *Estelle*, 502 U.S. at 73 (1991) (internal quotation and citation omitted). To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and

conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted). This standard allows state courts "wide latitude . . . with regard to evidentiary matters under the Due Process Clause." *Id*.

Here, the trial court acted within the bounds of due process when it allowed the expert witness testimony. To show that admission of evidence violated due process, a petitioner generally must identify "a Supreme Court case establishing a due process right with regard to [the] specific kind of evidence" challenged. *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012). Petitioner does not do so here.

First, the record shows that the child-sexual-abuse-dynamics expert, Thomas Cottrell, did not vouch for the complaining witness's credibility. Instead, Cottrell explained general behaviors that were consistent with sexual abuse, which included the relevant topic of delayed disclosure. ECF No. 13-4 at PageID.546–47. Second, no clearly established Supreme Court precedent prohibits an expert witness from providing this kind of testimony. *Montaldi v. Brown*, No. 22-1340, 2022 WL 14154228, at *3 (6th Cir. Aug. 22, 2022) ("[T]here is no clearly established Supreme Court case that prohibits states from admitting expert testimony that embraces an ultimate issue."); *see also Hoglund v. Neal*, 959 F.3d 819, 838 (7th Cir. 2020) (finding no clearly established Supreme Court precedent on expert vouching); *Cummings v. Rapelje*, No. 11-10003, 2016 WL 4191733, at *16 (E.D. Mich. Aug. 9, 2016) ("[T]here is no federal law or rule that prevents one witness from 'vouching' for the credibility of another witness."). Absent such "clearly established Federal law," the state appellate court's denial of the claim cannot be an unreasonable application of federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (stating that where the Supreme Court's "cases give no clear answer to the question presented," a

state court's decision cannot constitute an unreasonable application of clearly established Federal law).

Petitioner also claims that defense counsel provided ineffective assistance by failing to object to the expert witness's testimony. On habeas corpus review, to prevail on an ineffective assistance of counsel claim, a petitioner must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *See id*. at 687.

The Michigan Court of Appeals denied this claim because any objection to the testimony would have been meritless and futile. *Tims*, 2021 WL 1478342, at *4 ("Because Cottrell provided admissible testimony . . . no legitimate basis on which defense counsel could object existed and had defense counsel objected it would have been futile."). The Court will "not second-guess a state court's decision concerning matters of state law." *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001). The state court's denial of this claim was not contrary to, or an unreasonable application of, *Strickland*. *See Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) (failing to raise a meritless objection does not constitute ineffective assistance of counsel). Accordingly, Petitioner is not entitled to relief on this claim.

### B. Confrontation Clause

Next, Petitioner argues that the trial court violated his Sixth Amendment right of confrontation by limiting his cross-examination of the complaining witness. ECF No. 1 at PageID.7. Specifically, he argues that he was not permitted to cross-examine the witness

regarding her past sexual history, which damaged his defense. *Id.* The Michigan Court of Appeals disagreed.

In Michigan, evidence of a victim's sexual contact with others besides the defendant—in the form of specific instances of conduct, opinion, or reputation—is generally inadmissible under the Rape-Shield Act, MICH. COMP. LAWS § 750.520j; *People v. Gaines*, 856 N.W.2d 222, 242 (Mich. Ct. App. 2014). Only two types of evidence are admissible under the Rape-Shield Act, assuming the evidence is "material to a fact at issue in the case" and its "inflammatory or prejudicial nature does not outweigh its probative value": (1) evidence of the victim's past sexual conduct with the actor, and (2) evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease. MICH. COMP. LAWS § 750.520j(1)(a) & (b). Further, evidence of a victim's age-inappropriate sexual knowledge may be admitted under certain safeguards. *See People v. Morse*, 586 N.W.2d 555 (Mich. Ct. App. 1998).

Applying the Rape-Shield Act, the Michigan Court of Appeals concluded that counsel's cross-examination was appropriately limited, stating that "[t]he record indicate[d] that defense counsel's cross-examination probed the victim's source of sexual knowledge and enabled defendant to present evidence of an alternative source for her age-inappropriate knowledge. The trial court appropriately precluded eliciting testimony from the victim regarding other specific instances of sexual conduct with other persons as required under MCL 750.520j(1)." *Tims*, 2021 WL 1478342, at *6.

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. The Sixth Amendment's Confrontation Clause guarantees an accused in a criminal prosecution the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The right of confrontation traditionally includes the right to

attempt to discredit a witness by, among other strategies, attempting to impeach a witness with prior inconsistent testimony. *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

But trial judges have "wide latitude" to impose "reasonable limits" on the scope of cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). In short, "'the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id*. (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

Here, the trial court appropriately limited Petitioner's scope of cross-examination. Defense Counsel requested that the court allow him to cross-examine the complaining witness regarding other consensual sexual encounters to show that her age-inappropriate knowledge about sexual intercourse was learned before and separate from Petitioner. ECF No. 13-5 at PageID.679–80. The trial court allowed Counsel to ask about the witness's sexual knowledge but prohibited any inquiry about her past sexual history, including consensual encounters. *Id*. at PageID.681–83. The trial court also permitted counsel to explore the complaining witness's allegations of another past sexual assault. Because the state court allowed Petitioner ample opportunity to cross-examine the victim on relevant matters, Petitioner was not denied his right to present a meaningful defense. *See Van Arsdall*, 475 U.S. at 679. Thus, the state court decision was not contrary to or an unreasonable application of Supreme Court precedent.

### C. Prosecutorial Misconduct

Lastly, Petitioner argues that the prosecutor violated his right to a fair trial by questioning the expert witness in a way that bolstered the complaining witness's credibility. ECF No. 1 at

PageID.8. Respondent argues that this claim is unexhausted because it was not presented to all levels of the state appellate courts. Respondent is correct.

Nevertheless, the claim is plainly meritless, so this Court will ignore the exhaustion requirement. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Rhines v. Weber*, 544 U.S. 269, 277 (2005). This Court's review is *de novo* because no state court adjudicated the merits of Petitioner's claim, and the deference due to state-court decisions under AEDPA does not apply. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

For a petitioner to be entitled to habeas relief based on prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts more leeway . . . in reaching outcomes in case-by-case determinations." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (citation modified). *Parker* rejected an attempt to graft any additional requirements onto the "very general" *Darden* standard.

In this case, Petitioner has not shown that the prosecutor's conduct so infected the trial with unfairness that his convictions resulted in the denial of due process. As discussed above,

Cottrell—the expert witness—did not vouch for the complaining witness's credibility. Accordingly, the prosecutor did not commit any misconduct through her questioning. As a result, Petitioner is not entitled to habeas relief on this claim.

### IV.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted).

Here, reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief. Thus, a COA will be denied. Petitioner will also be denied leave to appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

### V.

Accordingly, it is **ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED.**

Further, it is **ORDERED** that a certificate of appealability is **DENIED.**

Further, it is **ORDERED** that leave to proceed *in forma pauperis* on appeal is **DENIED**.

**This is a final order and closes this case**.

- 13 -

Dated: February 23, 2026

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge